UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SHAFAYETTE SAKIF, an infant by his parents and
natural guardians, SADIA BEGUM and
MOHAMMED UDDIN, and SADIA BEGUM and
MOHAMMED UDDIN, individually,

                                          Plaintiffs,

-against-

UNITED STATES OF AMERICA,

                                          Defendant.
----------------------------------------------------------------x

06 CIV 2719
(AJP)

**AFFIRMATION
IN OPPOSITION**

      Elliott J. Zucker, an attorney duly admitted to practice before this Court, hereby swears under the penalties of perjury and upon information and belief as follows:

      1.    I am a member of the law firm of Aaronson Rappaport Feinstein & Deutsch, LLP, the attorneys for Bronx Lebanon Hospital, Maria Emerson, M.D., Iris Amarante, M.D., Dara Forester, M.D., and Mauricio Silva, M.D. The plaintiff's pending motion seeks to add the hospital and these individuals (who were hospital residents at the time of the incident of the center of this lawsuit) as direct, distinctly-named, defendants to her pending action against the United States of America. As counsel, I am fully familiar with the fact and circumstances herein, based upon a review of our file and based on the materials provided to us by the current parties to the pending litigation.

      2.    This affirmation is submitted in opposition to the plaintiff's application to add the hospital and its residents to this federal action as individually-named defendants. As will be discussed below, largely because of unique procedural peculiarities of this case, the plaintiff's

{00569802.DOC}         1

request for this court to extend its jurisdiction over these proposed parties is literally unprecedented, and should be denied.

3. At the outset, we must state that the submission of these opposition papers does not constitute an "answer" or appearance by the opposing parties, does not constitute an agreement that the Court has jurisdiction over the proposed parties, and meaning no disrespect to this Court, does not constitute consent, as delineated in Federal Rule of Civil Procedure 73, to the exercise of authority of jurisdiction by a magistrate judge or constitute a waiver of Rule 74 protections as to the right to seek an appeal of a magistrate judge's decision.

## BACKGROUND

4. The plaintiff's application is the result of what can only be deemed as a number of procedural oddities. As the Court is aware, this litigation, at least when it first began, arose from the plaintiff's claims, *all* grounded in New York State law, of medical malpractice in the prenatal care and the subsequent delivery of the infant-plaintiff Shafayette Sakif, the child of the plaintiff-mother Sadia Begum. The child was born on April 13, 2004 at Bronx Lebanon Hospital, and the prenatal care was provided as the Woman's Health Center, a federally-financed clinic associated with the hospital.

5. As the plaintiff's papers acknowledge, she initially brought suit in this matter by filing and serving a summons and complaint in New York State Court, specifically in Supreme Court, Bronx County. The plaintiff's papers then, with a somewhat insidious tone, recite that Bronx Lebanon sought extensions of time in which to submit answers, with the hospital pointing out that the claims in the lawsuit might be covered under the Federal Torts Claim Act (FTCA). In reality, of course, there was nothing nefarious or misleading about this, and the Department of

Health and Human Services would later deem the claims in the lawsuit to be covered under the FTCA.

6. In situations like this, it is our understanding that the usual procedure is for the case to be removed from state court to federal court by the service of a notice of removal by the U.S. Attorney's office. See, 28 U.S.C. 1446. For whatever reason, that is not the procedure that was followed in this case. Instead, the plaintiff started a new action in federal court, against the United States of America (the government is the properly-named defendant under the FTCA), based on the exact same claims and allegations that were made in the state court lawsuit. The court should note, however, that the state court action was never discontinued, and by the plaintiff's own admission, is still being carried as an active case in Supreme Court, Bronx County, albeit a case on which no activity has occurred. The plaintiff's decision to start a second lawsuit, rather than proceeding to federal court via removal, results in what might be termed the first problem here, as the Court does not have the power to simply remand the case back to state court.

7. After what we understand to be a significant amount of discovery had taken place in the federal court action (including the depositions of all of the involved health care providers, although not of the plaintiff), two things occurred which have brought matters to something of at least a temporary standstill. First, the plaintiff has indicated (both in open court and in conversations with counsel) a desire to discontinue all allegations of malpractice with regard to prenatal care that was rendered at the hospital's clinic. Second, the government informed Bronx Lebanon, the plaintiff and this Court that a rather belated decision had been made that the care rendered in the hospital itself at the time of labor and delivery would not, in fact, be covered under the FTCA, despite the government's previous determination that coverage would apply.

The government suggested, therefore, that the United States must be dismissed as defendant and that the plaintiff must (if she was dropping her clinic claims) pursue Bronx Lebanon and the involved physicians in some other forum. See the April 4, 2007 letter of the U.S. Attorney's office, annexed to the plaintiff's motion papers as Exhibit "L."

### THE COVERAGE QUESTION

8. At a conference before this court on May 14, 2007, your affirmant informed the court that the hospital was going the seek review of the government's determination to "uncertify" the FTCA coverage of this case.

9. The government's decision to reverse its FTCA coverage determination appears to rest on language in the original "deeming letter" from December 2005, a copy of which is annexed hereto as **Exhibit "A,"** which laid out the terms under which FTCA coverage would be provided for both claims as to the Woman's Health Center and, in certain circumstances, as to care rendered in the hospital proper (as in the labor and delivery in the case at bar). The government's decision rests on that part of the deeming letter that provides that FTCA coverage will apply to actions within the hospital itself if the care in question is provided through an attending physician who also followed the patient at the federally-funded clinic. In this instance, the government has taken the position that because Dr. Lawrence Ham (another of the proposed new defendants, not represented by you affirmant's office), the attending physician who participated in the delivery of the infant-plaintiff, did not see or provide care to this patient in the clinic – i.e., because he did not "follow" the patient – FTCA coverage would not apply.

10. The government's position, however, ignores other, significantly broader language in the original deeming letter to the effect that in-hospital care would be covered under the FTCA so long as the patient was a clinic patient and so long as the attending providing the

{00569802.DOC} 4

care was a "clinic-based" physician. Here, there is no question that the patient, Ms. Begum, was a clinic patient, and the hospital's position is that Dr. Ham was in fact a clinic-based physician.

11.     The Department of Health and Human Services' position that this broader language is overridden by the language indicating FTCA coverage only exists when the *same* attending follows his or her patient from clinic to the hospital makes little practical sense. It makes no provision for cross-coverage by clinic-based physicians, and results in FTCA coverage being determined by pure coincidences of timing. For example, under the government's position, FTCA coverage applies to a patient who has her child delivered in the hospital by the same attending physician who saw her in the clinic. If that same patient goes into labor an hour later, however, just after the physician she saw in the clinic has gone off duty (or if, for example, that physician is out sick on a particular day), and she delivers with a different clinic physician who is on call at that time, FTCA coverage would not apply. The government's posture requires, in other words, all clinic-based physicians to be on call all the time for there to be FTCA coverage (hardly a realistic proposal) or, alternatively, relegates FTCA coverage not to some predictable standard but instead to the luck or happenstance of the timing of when a patient happens to go into labor.

12.     In an effort to seek review of its decision to de-certify the FTCA coverage of this particular case (and to obtain guidance for future cases), the hospital arranged for a conference with attorneys and representatives of the Department of Health and Human Services. This conference took place via telephone on May 23, 2007. The hospital's concerns with not just the coverage decision in this case, but with all cases going into the future, were aired. As a result of the conference, the government has asked the hospital to provide to it with further information, including affidavits attesting to Dr. Ham's status as a "clinic-based" physician, information

regarding the amount of time Dr. Ham spent in the clinic versus in the hospital itself, the "on call" schedule for the clinic, and information regarding Dr. Ham's "gap" insurance policy.

13. The hospital is endeavoring to gather this information and send it to the Department of Health and Human Services within the next week, and the hospital has been told that the government will then "promptly" review these materials and determine whether or not it is going to reconsider, or change, its FTCA coverage opinion.

14. It goes without saying that there are practical consequences to the outcome of the current review and reconsideration process. Clearly, if the government, upon reviewing the additional materials provided by the hospital, agrees with the hospital's position and decides again that FTCA coverage for the remaining allegations in the case is appropriate, this case is going to continue to be litigated as it was before the recent impasse, with discovery resuming from where it left off and with the United States as the only properly-named defendant. On the other hand, if the Department of Health and Human Services sticks to its current position that FTCA coverage will not apply to the remaining claims, then the United States is by necessity going to have to be dismissed from this action, and as will be discussed further below, the plaintiff will have to pursue another avenue with regard to her purely state-law claims.

15. In the interim, we are in receipt of the May 18, 2007 letter from the U.S. Attorney's office to this Court, annexed as **Exhibit "B,"** which discusses the process of seeking "review" of FTCA coverage decisions. That letter notes that the hospital has the right to seek review of the government's coverage decision directly with this Court. This is true, but that does not mean that the hospital may not initially seek an internal review and reconsideration directly from the appropriate officials at the Department of Health and Human Services; nothing in the Federal Tort Claims Act prohibits exploring or pursuing such internal reviews before seeking

judicial review  When, and if, the government rejects the hospital's position upon reconsideration and upon review of the documentation they have now requested, the hospital can then decide whether it wants to further pursue its position via judicial intervention, or whether it will simply let matters stand. That determination cannot be made until the hospital hears the basis of the government's determination.

## THE QUESTION OF JURISDICTION

16  It is important to initially recognize what the plaintiff is *not* doing with her current motion. She is not, for example, simply seeking to amend the caption of this matter by substituting Bronx Lebanon and its various doctors in the place of the United States as a defendant. The plaintiff cannot do this, of course, because until the foundational FTCA coverage question is settled, the plaintiff cannot actually say that the United States is not a proper defendant. Nor is the plaintiff's application really one to add new parties to the case, despite the wording of the relief ostensibly requested in the moving papers. After all, the hospital and its physicians are already defendants in this matter, albeit as ones sued under the name of the United States of America, which is what the FTCA requires since, under the terms of FTCA coverage, they were all theoretically "employees" of the United States, and one can only sue the United States in federal court. The plaintiff's motion essentially seeks to bring into the case parties who are already in the case. Is the plaintiff claiming that all the physician depositions she has conducted are nonparty depositions?

17.  The plaintiff's motion papers go on for some length arguing about the "relation back" doctrine. What is entirely absent from her papers, however, is any argument about the jurisdictional basis for asserting claims in federal court against the parties she proposes to add through her amended pleadings. That is because there is no jurisdictional basis. This is not an

"and" situation, where the court can have jurisdiction over the United States *and* jurisdiction over the same entity and individuals who are given a different nomenclature in the caption. This is an "either/or" situation. *Either* the FTCA covers the remaining claims of malpractice, in which case the United States is the proper defendant, *or* the FTCA does not cover those allegations, in which case the United States must be dismissed as a defendant and the proper defendants are the hospital and the physicians. It cannot be *both* simultaneously. The problem, of course, is that if there is no FTCA coverage and the United States is an improper defendant, there is no jurisdictional basis to maintain this lawsuit in federal court, since there is no diversity and since there are no federal questions involved.

18. The proposed new parties are cognizant of the concept of pendant jurisdiction. This is not, however, a pendant jurisdiction situation. As the annotations to 28 U.S.C. 1367 make clear, pendant jurisdiction might arise if, for example, a state malpractice claim is removed to federal court because the United States is one of the proper party defendants, and there are other defendants with no federal "connection." In that case, the federal court may chose to exercise its pendant jurisdiction over the non-federal defendants who have been removed along with the rest of the case. Another example of the appropriate exercise of pendant jurisdiction might occur when a malpractice claim is joined with a claim alleging violations of a federal civil rights statute. In that situation, a federal court might exercise its pendant jurisdiction over the purely state law-based malpractice claims, even if the civil rights claims are eventually dismissed.

19. None of those scenarios are even remotely close to the unique situation we have here (we could find no case law even remotely analogous to what the plaintiff is trying to do in the case at bar). As we stated before, the proposed new defendants are not simply being dragged

into federal court because the court already has jurisdiction over a *different* party; the party the court already has jurisdiction over, the United States, is the same party as the proposed additional defendants. While a plaintiff is obviously free to plead alternate theories, there is no case of which we are aware permitting a plaintiff to add ostensibly different defendants -- but in reality the same party -- because of a pending question of FTCA coverage.

20. As an aside, the letter of the U.S. Attorney's office of May 18, 2007 suggests that if the hospital chooses to bring to this Court for its review the question of FTCA coverage for the events alleged in this case, that request for review might be a sufficient "hook" under which this court could continue to exercise its jurisdiction over this matter under Osborn v. Haley, ___U.S.___, 127 S.Ct. 881 (2007). Putting aside the interpretation of that case, it need now only be said that the hospital has not in fact yet asked the court for any such review, choosing instead to go through an internal Department of Health and Human Services review first, so this has no relevance at this point.

## THE PROPER REMEDY

21. As we stated before, sometime in the very near future an ultimate determination is going to be made regarding the FTCA coverage in this case. If the hospital's position on coverage is correct, the United States will continue as the named defendant and the plaintiff's application will be moot. If the hospital's position as to FTCA coverage is not accepted upon further review, and the United States is not a proper party to this action, we would respectfully submit that the proper remedy is not for this court to exercise jurisdiction over those who would then become appropriately-name defendants in a non-diversity, non-federal question, non-FTCA case. It would be, instead, for this case to be litigated in its appropriate forum, New York State

{00569802.DOC}                                    9

court. Indeed, there can be little doubt that had this case made it into federal court via the normal removal process, this Court would simply order the remand to state court directly.

22. Since the Court cannot do that here, as there never was a removal in the first place, the solution seems simple: let the plaintiff resume prosecution of her already and still-pending state court action, which encompasses the exact same facts, claims and parties. Indeed, the plaintiff has previously acknowledged that this is the appropriate way to proceed, and has engaged in rather extensive discussions with counsel for the proposed new parties about entering into a stipulation about the resumption of the state court action. In reality, putting aside the soon-to-be-resolved FTCA coverage question, the one and *only* reason the current motion has been made is because the various attorneys involved in negotiating the stipulation have not yet come to mutually agreeable terms about that language of any such stipulation. In the course of negotiating a proposed stipulation, the plaintiff expressed a number of concerns about resuming prosecution of her state court claim, including avoiding duplication of discovery that has already taken place in the federal action, whether the defendants will be able to argue that any motion made by the plaintiff for a default against them (the defendants never answered in the state court action after the plaintiff chose to start her federal action) is untimely, and whether the defendants will be able to avail themselves of any statute of limitations arguments regarding the plaintiff-parent's claims if for some reason the plaintiff must start a new action in state court. If it is even necessary (depending on the result of the FTCA coverage review), we suspect that the parties may be able to work through some of these issues via stipulation, while some may still not be reachable by a stipulation agreeable to all sides. During the May 14, 2007 conference, this Court expressed the opinion that, given the circumstances by which the plaintiff wound up in federal court, no state court is going to rule against the plaintiff on any of these issues. That may well be

the case, but those will be questions for a state court judge to decide under state law, if even necessary. The fact that the plaintiff may have to litigate some procedural issues in state court should not be enough, we submit, to result in this court exercising jurisdiction which in any other circumstance it clearly would not exercise.

WHEREFORE, it is respectfully submitted that the plaintiff's motion be denied, and that this court grant such other and further relief as is just and proper.

Dated: New York, New York
       May 24, 2007

_____
ELLIOTT J. ZUCKER



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Health Resources and Services
Administration

Bureau of Primary Health Care
Rockville MD 20857

DEC 30 2005

Mr. Bruce Peckman
Executive Director
Bronx-Lebanon Hospital Center
[Subgrantee of Bronx-Lebanon
 Integrated Services System]
1276 Fulton Avenue
Bronx, New York 10456

Dear Mr. Peckman:

The Bureau of Primary Health Care (BPHC) very much appreciated meeting with Bronx-Lebanon Integrated Services System's (BLISS) officials and representatives of Bronx-Lebanon Hospital Center (BLHC) and Martin Luther King Jr. Health Center (MLK). BPHC has reviewed the Federal Tort Claims Act (FTCA) issues raised during its meeting with BLISS, MLK, and BLHC.

A subrecipient is "an entity which receives a grant or a contract from a covered entity to provide a full range of health services on behalf of the covered entity." (42 C.F.R. 6.2.). Further, "subrecipients of grant funds described in paragraph (a) of this section are eligible for FTCA coverage only if they provide a full range of health care services on behalf of an eligible grantee and only for those services carried out under the grant funded project." 42 C.F.R. 6.3(b).

BPHC has concluded that the contract between BLISS, BLHC, and MLK have met the standards set forth in the above regulations. We want to emphasize that only the sites and services approved in BLISS scope of project (as listed in Exhibit B of BLISS grant application) are eligible for coverage under the FTCA. Those sites are:

1. Dr. Martin Luther King, Jr., Health Center
   1265 Franklin Avenue
   Bronx, NY 10456-3501

2. Ambulatory Care Network
   1650 Grand Concourse
   Bronx, NY 10457-7606

3. Family Practice Center
   1276 Fulton Avenue, 3rd Floor
   Bronx, NY 10456-3501

Page 2 – Mr. Bruce Peckman

4. Roe Medical and Dental Center
   2432 Grand Concourse
   Bronx, NY 10458-4204

5. Mid-Bronx Desperadoes Family Medicine (MBD)
   1690 Bryant Avenue
   Bronx, NY 10460

6. Tiffany Primary Care Practice
   853 Tiffany Street
   Bronx, NY 10459-4503

7. Crotona Park Family Practice
   1591 Fulton Avenue
   Bronx, NY 10457-8234

8. Medical Practice at Third Avenue
   2737-41 3rd Avenue
   Bronx, NY 10451

As discussed in the meeting between BPHC staff and BLISS, BLHC, and MLK staff on August 8, 2005, FTCA coverage will not extend to services outside the scope of project of BLISS, including inpatient services at BLHC. Coverage for hospital-based services is limited to health center based physicians who follow their patients from one of the approved delivery sites to BLHC to provide inpatient medical care. (See Policy Information Notice 99-08.) The services of the regular hospital staff (residents, nurses, anesthesiologists, etc.) who may be working with health center-based physicians following patients hospitalized at BLHC are not covered by FTCA. In order to be covered while providing services at the hospital, the covered entity must show that (1) the hospitalized patient was a patient at one of the approved health center delivery sites and (2) the attending physician is a health center-based physician. (42 USC 254b(a)).

Residents will be covered under the FTCA for the ambulatory medical care provided at one of the approved sites listed above, but will not be covered by FTCA for any inpatient medical services provided at the hospital. Coverage for inpatient services is afforded in very limited circumstances and can only be extended to the attending physician that follows a patient from the approved health center delivery site. (42 C.F.R. 6.6(b); BPHC PIN 97-6).

To ensure coverage, BLHC must develop a system that (1) tracks the patients that are served in the approved delivery sites of BLISS; (2) and maintain dated lists of rotation schedules for each approved delivery site for residents and attending

Page 3 – Mr. Bruce Peckman

physicians which can be reviewed by BPHC should claims arise in the future. MLK and BLHC employees who do not provide approved services in an approved delivery site or who are not following a patient treated at an approved site would not be covered under FTCA.

If you have any questions, please contact Ms. Aida Stark in the Division of Clinical Quality, BPHC, Health Resources and Services Administration, at 301 594-4442.

Sincerely,

A. Michelle Snyder
Associate Administrator



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

86 Chambers Street, 3rd Floor
New York, New York 10007

May 18, 2007

BY FACSIMILE

Hon. Andrew J. Peck
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Suite 1370
New York, New York 10007
Facsimile: (212) 805-7933

   Re: *Sakif, et al. v. United States*, No. 06 Civ. 2719 (AJP)

Dear Judge Peck:

  This Office represents the United States in the above-referenced medical malpractice action. At Monday's status conference, putative counsel for Bronx-Lebanon Hospital Center and certain of its doctors indicated that they would be challenging the Department of Health and Human Service's (HHS's) decision not to certify those providers as federal employees to the extent that they provided care to the plaintiffs outside of the hospital's Women's Health Clinic. (A copy of HHS's letter informing the hospital of its decision, dated April 12, 2007, is enclosed). Your Honor requested that the Government provide a summary of the relevant procedures and standards for such a challenge so that the process could be expedited to the extent possible.

**I. Review of the Government's Non-Certification Decision: The Procedure**

  Review of HHS's decision will be pursuant to the terms of the Federal Tort Claims Act (FTCA). The FTCA provides in relevant part:

> In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment.

28 U.S.C. § 2679(d)(3).[1] Thus, under the terms of the FTCA, an individually-named plaintiff may petition the court directly for certification. No further administrative review is necessary.[2] *But see generally Alexander v. Mount Sinai Hosp. Medical Center*, — F.3d —, 2007 WL 1189489 (7th Cir. Apr. 24, 2007) (evaluating challenge to non-certification decision under the Administrative Procedure Act rather than the FTCA); *El Rio Santa Cruz Neighborhood Health Center v. U.S. Dep't of Health and Human Services*, 396 F.3d 1265 (D.C. Cir. 2005) (same).

Under the FTCA, the Court's review of the Government's non-certification decision is *de novo*. *See McHugh v. University of Vermont*, 966 F.2d 67, 72 (2d Cir. 1992), *abrogated on other grounds, Osborn v. Haley*, — U.S. —, 127 S.Ct. 881 (2007). The Government's determination, however, serves as *prima facie* evidence of the validity of its position. *See Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992). The party seeking review bears the burden of rebutting or disproving, by a preponderance of the evidence, the Government's decision to grant or deny the scope of employment certification. *Schrob*, 967 F.2d at 936; *see also Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993).

If the Court determines that the Government's decision was incorrect, then the United States will be substituted for the individually-named defendants (assuming the plaintiffs's motion to file an amended complaint naming the individual defendants is granted). If the Court upholds the Government's decision, then the United States will drop out of the suit, but the action will remain in federal court — the Supreme Court has recently held that federal courts have no authority to remand a case in that posture to state court because the challenge to the certification decision represents a substantial threshold federal question. *See Osborn*, 127 S.Ct. at 896. Thus, if the Government's decision on certification is challenged in this court, then this case must also be litigated to its conclusion before this court. *See id.*

Regardless of whether the Court affirms or reverses the Government's non-certification decision, the losing party is permitted to take an immediate interlocutory appeal pursuant to the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *See Osborn*, 127 S.Ct. at 893.

---

[1] When the predecessor version of this case was removed from New York State Supreme Court, the Attorney General's designee did certify that the then-named defendants were acting within the scope of their federal employment. As the Supreme Court has recently made clear, however, that initial certification is binding only for purposes of removal, and has no estoppel effect that would require the Government to defend this suit once removed. *See Osborn v. Haley*, — U.S. —, 127 S.Ct. 881 (2007).

[2] Nonetheless, officials at HHS have granted Bronx-Lebanon an opportunity to present their case for reconsideration. That meeting is scheduled to take place early next week and need not impact any schedule adopted by the Court.

## II. Review of the Government's Non-Certification Decision: The Substantive Law

The FTCA also provides the substantive standard that should be employed in reviewing the Government's non-certification decision. A certification should issue if the alleged tortious act or omission was committed by an "employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). "If [the individually-named defendant] is inside that line, he is not subject to . . . suit; if he is outside the line, he is personally answerable." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 423 (1995). Whether an employee was acting within the scope of their federal employment, in turn, is dependant on the nature of the employment and the alleged negligence. *See, e.g., Hamm v. United States*, 483 F.3d 135, — (2d Cir. Apr. 11, 2007) (applying federal law defining military scope of employment as "acting in line of duty," and New York *respondeat superior* law); *McHugh*, 966 F.3d at 75 (turning to Vermont scope-of-employment law). In this case, the question is whether Bronx-Lebanon and its doctors were acting within the scope of their *federal* employment when they provided allegedly negligent care to plaintiffs. To answer that question, the Court must turn to a series of interlocking statutes administered by HHS.

The United States makes primary health care services available to medically under-served populations throughout the United States under four federally funded programs, one of which is the Community Health Center program. *See generally* H.R. Rep. No. 104-398, *reprinted in* 1995 U.S.C.A.A.N. 767, 769. Specifically, the United States provides grants to establish or maintain community health centers. To facilitate the affordable provision of these needed medical services, the Federally Supported Health Centers Assistance Act of 1995, Pub. L. No. 104-73, 109 Stat. 777 (1995) (codified at 42 U.S.C. § 233(g)-(n)) makes those federally-funded community health centers, their employees, officers, and individual contractors eligible for medical malpractice coverage under the FTCA. *See generally* Public Health Service Act, 42 U.S.C. § 201, *et seq*.

Health center employees are eligible for FTCA coverage only while providing services within the approved scope of the federal grant project, however. *See* Bureau of Primary Health Care Policy Information Notice 2002-07, *available at* ftp://ftp.hrsa.gov/bphc/docs/2002pins/-2002-07.pdf ("FTCA coverage is applicable only to staff and services that are documented as being within the scope of the approved project.").[3] The scope of project is a description of the health center's approved grant project, categorized by five core elements: sites, services, providers, target population and service area for which grant funds may be used in whole or in

---

[3] Policy Information Notices contain the agency's interpretations and application of the statutes and regulations it administers. Although no court to our knowledge has specifically passed on the deference that these Notices should be afforded, courts have routinely held that similar administrative interpretations, though not the products of formal rulemaking, warrant significant judicial respect. *See, e.g., Washington State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385-86 (2003). This letter refers to the Notices, rather than the underlying statutes and regulations, for simplicity's sake.

part. *Id.* The FTCA and various federal regulations do not permit FTCA coverage to follow health center providers providing care outside of the health center's approved scope of project, nor outside the scope of their employment. *See* Bureau of Primary Health Care Policy Information Notice 99-08, *available at* ftp://ftp.hrsa.gov/bphc/docs/1999PINS/PIN99-08.pdf. *See generally* 42 U.S.C. §§ 233, 254b.

In this case, Bronx-Lebanon Integrated Services Systems (BLISS) obtained a grant from HHS to provide community health services. BLISS, in turn, subcontracted with various entities (the "subrecipients") to actually provide those services. In general, when a Bronx-Lebanon employee provided medical services at one of those subrecipient sites, he or she was acting within the scope of the federal grant project, and so was covered for FTCA purposes; otherwise, he or she was not. Here, plaintiffs received medical care at both Bronx-Lebanon's Women's Health Clinic (which was an HHS grant subrecipient) and at the hospital's inpatient obstetrics and pediatrics units (which were not HHS grant subrecipients). In addition, the individually-named defendants as a matter of course worked at both the Women's Health Clinic and on the inpatient services. Discovery revealed, however, that the doctors who treated plaintiffs at the inpatient units never saw plaintiffs at the Clinic. Moreover, plaintiffs's counsel confirmed at the last status conference that none of their malpractice claims arise out of conduct that occurred at the Clinic. For those general reasons, HHS determined that Bronx-Lebanon and its doctors were acting outside of the scope of the federal grant project — and thus outside of the scope of their federal employment — when they provided medical care to plaintiffs. As a result, the Government declined to certify them or to provide coverage under the FTCA.

I hope this overview of the relevant procedures and standards has been useful. Thank you for your consideration.

Respectfully,

MICHAEL J. GARCIA
United States Attorney

By: _____
MATTHEW L. SCHWARTZ
Assistant United States Attorney
Telephone: (212) 637-1945
Facsimile: (212) 637-2750

enclosure

4

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK    )
                     ss.:
COUNTY OF NEW YORK   )

    RUTH A. TIERNEY, being duly sworn, deposes and says: that deponent is not a party to the action, is over 18 years of age and resides at Queens County, New York.

    That on the 25th day of May, 2007, deponent served the within AFFIRMATION IN OPPOSITION, upon:

> PEGALIS & ERICKSON, LLC
> Attorneys for Plaintiffs
> 1 Hollow Lane-Suite 107
> Lake Success, N.Y. 11042
> Attn: Rhonda L. Meyer
>
> MICHAEL J. GARCIA
> United States Attorney for the
> Southern District of New York
> Attention: MATTHEW L. SCHWARTZ
> Assistant United States Attorney
> 86 Chambers Street
> New York, New York 10017
>
> DWYER & TAGLIA
> Attorneys for Defendant
> LAWRENCE HAM
> 111 John Street
> New York, New York 10038

at the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

_____
RUTH A. TIERNEY

Sworn to before me this
25th day of May, 2007

_____
Notary Public

TRACY EASON
Commissioner of Deeds
City of New York - No. 4-4611
Certificate Filed in New York County
Commission Expires May 1, 20___

570001v